UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE CRISTOBAL MENESES,<br><br>Plaintiff,<br><br>v.<br><br>DAVID JENNINGS, et al.,<br><br>Defendants. | Case No. 21-cv-07193-JD<br><br>**ORDER RE TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 4 |

In November 2020, the governor of California commuted petitioner Enrique Cristobal Meneses's sentence of up to life in prison for a 2005 conviction of multiple counts of attempted murder. Cristobal is a citizen of Mexico and was almost immediately detained upon release from prison by Immigration and Customs Enforcement (ICE), in connection with removal proceedings for aliens convicted of felonies. In February 2021, an immigration judge denied Cristobal's application for relief from removal, which Cristobal has appealed to the Bureau of Immigration Appeals (BIA). Dkt. No. 1-3 at ECF pp. 58, 176.[1] In July 2021, a different IJ held a two-day bond hearing and concluded that Cristobal should remain in custody because the government had demonstrated by clear and convincing evidence that he posed a danger to the public and was a flight risk. *Id.*, Ex. L (IJ Bond Memorandum Decision), at ECF pp. 166-69. Cristobal appealed the bond decision to the BIA, where it is now pending. *Id.*, Ex. J (Notice of Appeal) at ECF p. 157. He is currently detained in Kern County, which is in the Eastern District of California, pursuant to a final removal order.

---

[1] For ease of reference, the page numbers for Dkt. Nos. 1-2 and 1-3 refer to the ECF numbers in the docket header.

In September 2021, Cristobal filed a habeas petition in this Court under 28 U.S.C. § 2241, which challenges the denial of bond and his ongoing detention primarily under the due process provisions of the Fifth Amendment. Dkt. No. 1. He has applied for a temporary restraining order for release from custody pending the disposition of the habeas petition, or alternatively for a "constitutionally adequate bond hearing." Dkt. No. 4.

A TRO is denied. Cristobal's appeal of the bond decision is currently pending before the BIA. He has not exhausted his administrative remedies, and the record before the Court does not warrant a waiver of the exhaustion requirement on the basis of irreparable injury or futility, as Cristobal contends. This is enough to deny a TRO without a determination of the injunctive relief factors of a likelihood of success on the merits, the threat of imminent and irreparable harm, and the like. The case is stayed until the BIA decides the bond appeal, subject to a timeliness consideration discussed in the Conclusion.

## DISCUSSION

### I. HABEAS JURISDICTION

In the government's view, Cristobal's detention at a facility in the Eastern District of California means that the Court lacks jurisdiction over the habeas petition because "a petition challenging detention lies only in the judicial district where the petitioner is being detained." Dkt. No. 16 at 7. The government urges the Court to dismiss the petition and deny the TRO for lack of jurisdiction, or transfer the case to the Eastern District of California.

The jurisdiction objection is not well taken. The Court has concluded in prior immigration habeas cases that the Northern District of California is an appropriate jurisdiction for petitions filed by aliens detained by the Director of the San Francisco ICE Field Office. *See Ahn v. Barr*, No. 20-CV-02604-JD, 2020 WL 2113678, at *2 (N.D. Cal. May 4, 2020); *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *2 (N.D. Cal. Jan. 8, 2020). That is the situation with Cristobal, *see* Dkt. No. 1 ¶ 15 (naming San Francisco Acting Field Director Jennings as respondent), and the government has not presented a good reason for a different outcome here.

The government overreads *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), to suggest that the Supreme Court has adopted a "bright-line district-of-confinement rule" that "applies in the context

... 

of immigration detention." Dkt. No. 16 at 9. To the contrary, the Supreme Court expressly declined to adopt a bright-line rule for habeas petitions by aliens with respect to who may be a proper respondent for purposes of habeas jurisdiction. *See Rumsfeld*, 542 U.S. at 435 n.8. The government construes *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020), as confirming the ostensible bright-line rule in *Padilla*, but *Padilla* said no such thing. *Lopez-Marroquin* simply cited *Padilla* without any gesture at resolving the question the Supreme Court left open, and so does not advance the government's argument in any way.

While that is enough to deny the jurisdiction objection, it is worth noting that the government also has not demonstrated that respondent Jennings in San Francisco is not a proper respondent. It takes the indirect tack of suggesting that a better candidate might be the assistant field director of the San Francisco Field Office "assigned to the Bakersfield Sub-Office within ERO [Enforcement and Removal Operations] San Francisco," which is within the Eastern District. *See* Dkt. No. 16-1 (Mull Decl.) ¶ 1 (brackets added for clarity). Even accepting this proposition solely for discussion, it does not lead to a different outcome for jurisdiction. As the government's own submission makes clear, that official works for the San Francisco Field Office. Consequently, any habeas relief ordered by the Court would necessarily be directed to the San Francisco office, which is within the Northern District. *See Ahn*, 2020 WL 2113678, at *2. The government has not shown otherwise.

## II. ADMINISTRATIVE EXHAUSTION

The government is on firmer ground with respect to the undisputed fact that Cristobal's appeal of the bond decision is pending before the BIA, and so his administrative remedies have not been exhausted. In *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011), our circuit laid out the procedures for the review of bond decisions by an IJ. If detainees "are dissatisfied with the IJ's bond determination, they may file an administrative appeal so that 'the necessity of detention can be reviewed by . . . the BIA.'" *Id.* at 1160 (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008)) (ellipses in original). "If they remain dissatisfied" after the BIA decision on appeal, "they may file a petition for habeas corpus in the district court." *Id.* (internal citation omitted).

As a general rule, a shortcut of bypassing the BIA and going immediately to the district court is "improper." *Leonardo*, 646 F.3d at 1160. A detainee should exhaust "administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision." *Id*. "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Id*.

The reason for requiring exhaustion is straightforward. The agency should be permitted to correct its own potential errors before resort is made to the district courts. Our circuit recently said as much in an unpublished memorandum decision. *See Reyes v. Mayorkas*, 854 F. App'x 190, 191 (9th Cir. 2021) (affirming stay of habeas case challenging an IJ bond determination while BIA appeal was pending) (unpublished). Consequently, exhaustion is typically required when "'(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

To be sure, the "exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Id*. It can be waived if the Court finds in its discretion that the circumstances warrant relief from exhaustion. *See id.*; *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). Waiver may be appropriate if the "'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceeding would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). These potential grounds for waiver are often referred to as the *Laing* factors, which the Court will do here. As the party asking for a waiver of the exhaustion requirement, Cristobal bears the burden of demonstrating that one or more of the *Laing* factors is in play. *See Leonardo*, 646 F.3d at 1161.

Cristobal has not carried his burden, and the record does not establish a good reason to short-circuit the BIA appeal process in favor of immediate relief in this Court. In the decision

4

denying a bond, the IJ concluded that the government "had proven by clear and convincing evidence that [Cristobal] posed a danger to the community and a significant flight risk." Dkt. No. 1-3 at ECF p. 166. In reaching that conclusion, the IJ took into account Cristobal's conviction by a jury in 2005 of four counts of attempted murder in an incident in which he and fellow members of the "Brown Pride" gang chased another vehicle at high speeds, and fired on the passengers with semi-automatic handguns. *Id*. at ECF pp. 167-68. The IJ noted that the victims had not provoked the incident, and that Cristobal had joined the Sureños gang at a fairly early age. *Id*. at ECF p. 168. The IJ also considered evidence that Cristobal continued to be involved in gang activity while incarcerated and was "ultimately placed in a super maximum security prison." *Id*.

In Cristobal's favor, the IJ gave substantial attention to the evidence of rehabilitation that resulted in the grant of clemency and commutation by the governor. The IJ acknowledged that Cristobal had obtained a GED degree, became a mentor and counselor in a substance abuse program, and engaged in other activities that indicated progress in positive directions. *Id*.

Even so, the IJ determined that Cristobal's positive conduct occurred during incarceration and not "outside of detention." *Id.* The IJ concluded that, overall, the government had carried the burden of demonstrating by clear and convincing evidence that Cristobal posed a "significant danger to the community." *Id*. The IJ also concluded that a bond should be denied on the separate and independent ground that the government had proven Cristobal was a flight risk. *Id*. The IJ took into account evidence that Cristobal "would have employment, housing, and support" if released, but found those circumstances were outweighed by the fact that Cristobal was subject to a removal order, his request for protection under the Convention Against Torture had been denied, and that his "prospect for immigration relief in the United States is highly unlikely." *Id*.

Two other aspects of the IJ's decision bear mention. The IJ applied the factors stated in *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006), to guide the determination of the bond request. *Id*. at ECF p. 167. Our circuit has validated the application of these factors in immigration bond proceedings. *See Singh*, 638 F.3d at 1206. As the IJ noted, *Matter of Guerra* entrusts the weighing and balancing of these factors to the IJ's discretion. Dkt. No. 1-3 at ECF p. 167 (quoting 24 I&N Dec. at 39, 40).

5

The other noteworthy aspect is the IJ's express acknowledgement of the favorable evidence adduced on Cristobal's behalf.  In addition to the IJ's comments already discussed, the IJ closed the bond memorandum with recognition of "the positive equities" in Cristobal's case, "including his family ties in the United States" and his efforts to address anxiety and stress disorders.  This is not a situation where an IJ might be criticized for simply disregarding evidence favorable to a detainee.

Cristobal's main challenge is that the IJ did not properly credit the evidence of his rehabilitation, and put too much emphasis on his convictions and prison record, which he regards as stale.  Dkt. No. 1 ¶¶ 70-73, 77; Dkt. No. 4 at 11-12, 20.  In Cristobal's view, this amounted to a deprivation of his constitutional due process rights.  Dkt. No. 1 ¶ 4; Dkt. No. 4 at 1.  He asks for a waiver of the exhaustion requirement on the grounds that he is experiencing irreparable harm by being detained in violation of due process, and that prosecuting an appeal before the BIA is futile.  *See* Dkt. No. 4 at 23; Dkt. No. 17 at 8.

Neither point is well taken.  To start, there is a fine line between Cristobal's constitutional claims, which the Court may review in a habeas proceeding, *see Singh* 638 F.3d at 1202, and custody determinations within the government's discretion, which are not subject to judicial review, *see Prieto-Romero*, 534 F.3d at 1067; 18 U.S.C. § 1226(e) ("no court may set aside any action or decision" for the "denial of bond or parole").  Cristobal does not contend that the IJ used the wrong standard of proof or misallocated the evidentiary burden, required an unpayable bond amount, or committed a due process violation of similar scale.  *See Singh*, 638 F.3d at 1203-04 (evidentiary burden); *Hernandez*, 872 F.3d at 994 (bond amount).  Such allegations would be rebutted by the record had he done so.

Rather, a fair reading of Cristobal's complaint and TRO application is that he takes issue with the way the IJ exercised her discretion in weighing the evidence and applying the relevant legal factors.  *See, e.g.*, Dkt. No. 4 at 19-20 (IJ "ignored" expert testimony and "improperly discounted" rehabilitation evidence).  A good argument can be made that this is just the kind of decisionmaking by an IJ that is outside the scope of judicial review, and a "petitioner may not

6

create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001).

In addition, it is not at all a foregone conclusion that the IJ was wrong in the conclusions she reached. The centerpiece of Cristobal's argument is that the 2005 convictions were too old as a matter of law to be material to the bond determination. That is not a self-evident proposition, and certainly not one stated in any of the cases Cristobal has cited. Convictions of a similar age and older have been the basis of immigration detention in other cases. *See, e.g.*, *Prieto-Romero*, 534 F.3d at 1056 (detention in 2005 in relation to 1989 felony conviction); *see also Reyes*, 854 F. App'x at 190 (affirming detention based on "twenty-year-old criminal conduct"). And as the bond memorandum makes clear, the IJ did not rely upon the 2005 convictions in a mechanical fashion, but rather engaged in a nuanced balancing of the evidence, including facts post-dating the convictions and evidence favorable to Cristobal. That is all the law requires. *See Singh*, 638 F.3d at 1206. This is also not a case where the prior crimes were minor or arguably victimless. Cristobal was convicted of four counts of attempted murder in connection with a car chase and firing a weapon at an occupied vehicle. On this record, the IJ cannot be faulted for crediting the "seriousness" of these offenses. Dkt. No. 1-3 at ECF p. 167.

In any event, the Court will assume for present purposes -- with the possibility of revisiting the question as developments in the case may warrant -- that Cristobal has made a reviewable and colorable claim that his bond hearing may not have completely satisfied due process expectations because the IJ relied too much on his criminal history and not enough on his rehabilitation record. That gets him in the door for judicial review, but it does not warrant a waiver of prudential exhaustion. The BIA is perfectly capable of determining whether the IJ violated due process in weighing the evidence under the governing standards. *See Morgan v. Gonzales*, 495 F.3d 1084, 1090 n.2 (9th Cir. 2007). Cristobal presented this very issue in his appeal to the BIA. *See* Dkt. No. 1-3, Ex. J. (Notice of Appeal) at ECF p. 158 (the IJ "erred in finding that the DHS had met its burden to prove by clear and convincing evidence that Mr. Cristobal is a danger, as well as a flight risk.").

Consequently, there is no basis for concluding that exhaustion is excused because the appeal to the BIA would be futile. Cristobal has not shown that the BIA's disposition on appeal will be an inevitable outcome as a result of an iron-clad policy that it follows in all similar cases, or for some other systemic reason. *See Al-Sadeai v. ICE*, --- F. Supp. 3d ---, 2021 WL 1978474, at *3 (C.D. Cal., May 18, 2021) (finding futility in appeal of standard of proof in bond hearings where "BIA precedent" mandated that standard). Nothing here indicates that the BIA will do anything other than a case-specific review of the IJ's analysis and conclusions, which does not permit a foretelling of the result it might reach.

Cristobal's claim of irreparable harm merely begs the question of whether he has suffered a constitutional deprivation. While there is no doubt that being detained without due process would be an irreparable harm, Cristobal simply assumes a deprivation to assert the resulting harm. That will not do. In addition, Cristobal says in effect that detention during the appeal of an order denying a bond is necessarily irreparable harm. Cristobal does not support that proposition with any legal authority, and adopting it would essentially mandate the release of all detainees while their appeals were pending, and thereby stand the exhaustion requirement on its head. It may be that Cristobal will experience personal and family disadvantages while his custody continues, but that is something all detainees experience to some degree while their cases are adjudicated.

## CONCLUSION

The TRO is denied, and the case is stayed pending resolution of the bond appeal by the BIA. At the hearing, the parties estimated that the BIA would resolve the appeal in approximately 7 months from the filing of the notice of appeal on August 12, 2021. The parties are directed to file by January 18, 2022, a joint report on the status of the appeal, or sooner if developments warrant. If it appears that the appeal is likely to go on for substantially longer than 7 months, the Court may revisit the waiver issue.

**IT IS SO ORDERED.**

Dated: October 14, 2021

JAMES DONATO
United States District Judge

8